UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORESTES JUAN ARIAS GARCIA<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX<br>Respondent. | No. 1:26-cv-04659-DJC-JDP<br><br><u>RELEASE ORDER</u><br>A# 216-979-350 |

Petitioner Orestes Juan Arias Garcia is a noncitizen detainee proceeding under First Amended Petition for Writ of Habeas Corpus. (FAP (ECF No. 7).) Petitioner has shown that his removal is not foreseeable and the Government has not rebutted his showing: the Court grants the Petition and orders release.

**BACKGROUND**

Petitioner is a citizen of Cuba who is presently in the custody of Immigration and Customs Enforcement ("ICE"). (Opp'n, Ex. 1 (ECF No. 9-1) at 2). The Court notes the following facts from the record provided by Respondents. Petitioner entered the United States in May 2021. (*Id*. at 3). He was transferred by Border Patrol to ICE custody in Phoenix, Arizona, the following day. (*Id*.) He was released and paroled into the United States on June 19, 2021, with in-person reporting requirements to ICE Miramar. (*Id*.) During his time in the United States, he had significant criminal contact.

(Opp'n, Ex. 7 (ECF 9-7).) On December 9, 2025, United States Citizenship and Immigration Services ("USCIS") issued a negative fear determination, finding, inter alia, that there is "no significant possibility" that Petitioner could "establish in a full hearing that the harm" he experienced or anticipates "is on account of" a protected ground, as required to qualify for asylum and withholding of removal. (Opp'n, Ex. 3 (ECF No. 9-3).)

On the day of his negative fear determination, December 9, 2025, ICE arrested Petitioner at the Miami, Florida USCIS Asylum Office, immediately following Petitioner's Credible Fear Interview. (Opp'n, Ex. 1 at 3.) On December 16, 2025, an Immigration Judge affirmed the negative credible fear determination and returned the case to the Department of Homeland Security ("DHS") for removal. (Opp'n, Ex. 2 (ECF No. 9-2) at 2.) In so doing, the Immigration Judge affirmed: "This is a final order. There is no appeal from this decision." (*Id*.) On January 12, 2026, ICE provided Petitioner with a Notice of Removal to Mexico, which he refused to sign. (Opp'n, Ex. 4 (ECF No. 9-4).) Petitioner has remained in custody since his December 2025 detention.

The briefing on this matter is now complete. (FAP; Opp'n (ECF No. 9); Traverse (ECF No. 10).)

**DISCUSSION**

While the Government does not state the basis of their authority to detain Petitioner, Petitioner is subject to a removal order that was finalized on December 16, 2025, over seven months ago: therefore, he is presumably detained under 8 U.S.C. § 1231(a)(6), a "special statute [that] authorizes further detention if the Government fails to remove the alien during those 90 days." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). However, the statute allows detention only for "a period *reasonably necessary* to bring about that [noncitizen]'s removal from the United States." *Id*. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The presumptive ceiling for this detention is six

months, after which, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701; *see also Jennings v. Rodriguez*, 583 U.S. 281, 298–99 (2018).

Petitioner has been detained for over six months following a final removal order. Petitioner has passed the *Zadvydas* threshold of the presumptively reasonable period necessary to effectuate his removal; once he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 689.

Petitioner asserts that "has not been advised of any future removal plans, nor has the government secured necessary removal documents." (FAP ¶ 60.) Petitioner also argues that removal to Mexico is premised on the consent of the individual subject to such removal. and consequently, removal to Mexico is unlikely based on Petitioner's non-cooperation. (Traverse at 3.) Petitioner has met his initial burden. "Standing alone, the fact that removals to a particular country are in fact occurring, says nothing about whether Mexico will accept [Petitioner] any time soon." *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025). And Petitioner's lack of compliance "casts further doubt" on the Respondent's ability to effectuate his third-country removal to Mexico. *Id.* Indeed, district courts have repeatedly found that similarly situated petitioners – Cuban nationals whom the Government is attempting to remove to Mexico against their will – have met their initial burden, especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen. *See, e.g.*, *Arenado-Borges*, 2025 WL 3687518, at *4 (holding that Petitioner met his "initial burden" where there was no meaningful dispute that removal to Cuba is likely where the Government makes only unsubstantiated assertions that it will remove Petitioner to Mexico) (internal quotation and citation omitted); *Olea Sanchez v. Bondi,* No. 1:25-

cv-00253-KKE, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026) (holding that Petitioner met his initial burden where he showed no progress was made towards obtaining travel documents to Cuba or Mexico and "provide[d] evidence" that "Mexico's acceptance [of him] may be contingent on [his] consent, which he is unwilling to provide") (internal quotation and citation omitted).

Respondents "submit[] that Petitioner has not met his burden to show his detention is unlawful or unconstitutional and has such the Petition should be denied" because he can be removed to Mexico if he cooperates with the removal. (Opp'n at 2.) But as Respondents acknowledge, district courts have rejected their argument in materially similar cases. (*Id.*) The bare existence of a standing agreement between the United States and Mexico, especially where Petitioner does not consent to such a removal, is not sufficient to rebut Respondent's initial showing that removal is not reasonably foreseeable. *See, e.g., Rodriguez-Fernandez v. Bondi*, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026) (holding that "given that Petitioner refuses to be removed to Mexico and has declined to sign the Notice of Removal to Mexico . . . Respondents' representations are not persuasive enough to rebut Petitioner's showing that his detention has become indefinite") (internal citation omitted); *Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-cv-04371-DAD-JDP, 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026) (holding the Government failed to rebut Petitioner's initial showing that his detention was indefinite where it argued only that removal is likely based on the "standing agreement" with Mexico and noting that "the standing agreement …appears to be contingent upon the non-citizens [sic] consent to be removed to Mexico").

Respondents also take the position that "continued detention is lawful while [Petitioner] refuses to cooperate with his removal to Mexico." (Opp'n at 2.) This Court acknowledges that continued detention based on a Petitioner's refusal to reasonably cooperate could undermine their claim that there is no significant likelihood of removal; for example, if a noncitizen withholds the necessary identification, or, as the

Ninth Circuit noted in *Lema v. I.N.S.*, "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government. 341 F.3d 853, 856 (9th Cir. 2003); *see also* 8 U.S.C. § 1231(a)(1)(C) ("the alien may remain in detention . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal"). But the Government cannot use indefinite detention to manufacture noncitizens' consent to removal to Mexico under the standing agreement. To adopt the Government's position on the use of detention to strong-arm third-country removals would not only undermine the consent required in those removals but also sanction the use of detention to coerce otherwise unavailable deportations.

As Respondents have presented no other arguments to rebut Petitioner's showing, the Court concludes that Petitioner's removal is not reasonably foreseeable, and he is entitled to relief.

**CONCLUSION**

IT IS HEREBY ORDERED that:

1. Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 7) is GRANTED as to the First Claim of the Petition.[1]
2. Respondents are ordered to immediately release Orestes Juan Arias Garcia from their custody, under reasonable terms of supervision pursuant to 8 C.F.R. § 241.5.[2]

---

[1] In the interests of judicial economy, the Court declines to address the remaining grounds for relief Petitioner has raised.

[2] Petitioner requests safeguards around a potential third-country removal. (FAP ¶¶ 62-80.) As the Court is ordering release, it finds that the process due in a potential third-country removal is not within the scope of the present case. The Court notes that it would likely not consider subsequent petitions on this issue as second or successive given the relief granted here.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner without a change in circumstances to warrant Petitioner's re-detention.
4. The Clerk is directed to serve Central Valley Annex Detention with a copy of this Order.
5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

IT IS SO ORDERED.

Dated: **August 3, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC-10-AriasGarcia26-cv-04659.merits